[No. 26119.   Department Two.   August 18, 1936.]

WILLIAM THOMAN, *Respondent*, v. HEARST CONSOLI-DATED PUBLICATIONS, INC., *Appellant*.[1]

*Tanner & Garvin,* for appellant.

*John F. Dore, Lynwood W. Fix,* and *Edw. A. Clifford,* for respondent.

TOLMAN, J.—This action was tried to a jury, resulting in a verdict against the defendant in the sum of

'Reported in 60 P. (2d) 106.

$1,690. From a judgment on the verdict, the defendant has appealed.

The sufficiency of the evidence to take the case to the jury is challenged, hence a brief statement of facts is necessary.

Respondent, a railroad man living in Cle Elum, seems to have learned, through newspaper advertising carried on by the appellant, of its campaign to sell to the investing public its Class A stock. In March, 1931, he sent by mail to the appellant's Seattle office a matured coupon, detached from a security which he held, of the value of twenty-five dollars, for the purchase of one share of appellant's Class A stock. The coupon was accepted; respondent was asked to sign a subscription form and to remit nineteen cents additional to cover accrued interest on the stock, and, upon his compliance, a one-share certificate was issued to him.

In April, 1932, respondent again wrote to the appellant at its Seattle office, applying to purchase four more shares of the same stock, and sent his monthly pay check from the railroad company in payment. He was again asked to sign a subscription form, the check was accepted, an overpayment of $1.54 was returned, and a certificate for the four shares was issued to him.

In January, 1933, upon the application of the appellant, one George R. Emery was, by the state department of licenses, given an agent's certificate authorizing him

". . . to represent and act in negotiating for the sale of, soliciting for the sale of, or taking subscriptions for the sale of securities, for and in behalf of the Hearst Consolidated Publications, Inc."

Thereafter, probably in the latter part of May following, Emery apparently was sent from the appel-

lant's office, or, actuated by information there obtained, he called upon respondent at his home in Cle Elum, cultivated his friendship as an astute salesman might be expected to do, and urged him to buy more of the appellant's stock. Finding that respondent was the owner of two one thousand dollar bonds, issued by others, Emery induced him to turn in both bonds on a further purchase of stock. The bonds were by the respondent delivered to Emery, and Emery turned them in at appellant's Seattle office, through which they were sold for $1,175. Thereafter, respondent was asked to and did sign a form of subscription for forty-seven shares of appellant's Class A stock, and in due course the stock was issued to him. During this transaction, the respondent was called to the appellant's Seattle office because of some trouble in having his bonds transferred, and thus saw and knew that the appellant recognized the authority of Emery to handle such a transaction for it.

Apparently knowing that respondent had other securities which were marketable, Emery, perhaps two weeks after the forty-seven shares transaction was closed, again visited respondent at his home and there induced him to turn over two additional bonds of the then market value of $1,690, saying, in effect, that another purchaser of appellant's Class A stock was in distress and was willing to sell his holdings of one hundred shares for $1,700; that, with the proceeds of the sale of the bonds, he, Emery, would buy in for the respondent this one hundred shares of stock, which stock he could and would shortly resell for its face value, thus netting respondent a handsome profit. Emery's representations were effective; he received the bonds from the respondent and gave him two writings as follows:

"June 16, 1933.
"Received of Wm. Thoman, Bond No. 25173—5% of
The Texas Corp. & Bond No. 67539—7% of the Gt.
Northern R. R. Co. to be sold and proceeds applied
to the purchase of 100 shs of Hearst Consolidated
Publication's stock at 17.00 per share. It is under-
stood that the above bonds are to represent full pay-
ment on said Hearst Stock.        Geo. R. Emery."

"Wm. Thoman—                        June 16, 1933.
    So. Cle Elum, Wn.
"Dear Mr. Thoman—
    "For and in consideration of your purchase of 100
shs of Hearst Consolidated Publication's, Inc. Class
A Preferred Stock at a price net to you of 17.00 per
share, I hereby agree to sell the above stock, between
this date and Sept. 15, at a par price of 25.00 per
share, to net you $2500.00, less the government trans-
fer tax. The above subject to your orders to me, to
either hold or sell.                Geo. R. Emery,
                                        Seattle P I"

Thereafter, Emery, from time to time, wrote letters
to respondent, which are in evidence, at first excusing
delays, then reporting the consummation of the pur-
chase of the one hundred shares of the Class A stock
as proposed by him, then excusing the delay in selling
the stock, reporting a dividend collected and remitting
therefor; the correspondence continuing until finally
Emery disappeared, having made no accounting. After
demand upon the appellant, this action was brought
to recover the value of the bonds so parted with.

Appellant admits that Emery was its agent for the
sale of its stock, and its evidence indicates clearly
that Emery had authority to accept from purchasers,
stocks, bonds or other securities to be sold for the
purchaser's account, the proceeds to be used in pay-
ing for the purchase of appellant's stock. It seems
to be also admitted that appellant's Class A stock was

unlisted, had no established market price, and that, to protect its market and increase its sales, the appellant company made some effort to take up and repurchase, or to find a buyer for, the stock of those who were forced to sell. Respondent testified that Emery represented to him that the appellant company stood ready to resell stock for any purchaser at any time that he was dissatisfied, and that the particular one hundred shares which he proposed to purchase with the proceeds of the bonds came within that classification, and that it was a part of the appellant's regular service to resell that stock for its owner.

In several of the letters written by Emery to the respondent, after the bonds were obtained, are expressions indicating that this was Emery's private transaction undertaken without the knowledge of or any authority from his employer. There are other matters, some tending each way, upon the question of the real or apparent authority of the agent Emery, which need not be detailed.

It seems to us that here was sufficient, substantial evidence to take the question to the jury.

The appellant procured the qualification under the statute of Emery as its agent to solicit for sale, negotiate for sale, and sell securities generally. The securities to be sold were not limited to appellant's Class A stock, and, in actual practice, the agent, with the knowledge and consent of the appellant, did solicit and obtain for sale securities with the issuance of which appellant had no connection. Moreover, appellant admits that it was its plan and purpose to protect its market by repurchasing or reselling its Class A stock in the hands of those who were forced to sell. Being a corporation, it could act only through its agents, and the broad authority which is granted to

Emery, coupled with his acts thereunder, were sufficient to warrant the jury in holding that Emery had both, or either, actual authority and apparent authority for what he did.

In this connection, we may say that the declarations of the agent as to the extent of his authority became admissible after other evidence of like nature had been given on behalf of the appellant. Even though respondent's testimony as to the declarations of the agent may have been received out of order, yet it became admissible before the case was submitted to the jury, and there was no reversible error in permitting that evidence to go to the jury.

The court instructed the jury that the various letters written by Emery to the respondent, after the bonds had been obtained by Emery, were to be considered only for the purpose of impeaching the testimony of the respondent. This, we think, was error, because the letters were some evidence of what the transaction between Emery and the respondent actually was. However, here that error was without prejudice to the appellant, because the testimony of the respondent was the sole evidence offered as to the transaction in question, and, if the jury believed the respondent, notwithstanding the impeaching letters, it would, of course, believe him as against what the letters said the transaction was. The jury had a right to believe that the statements made by Emery after the event were self-serving and made for the purpose of preventing a complaint by the respondent to his employer.

Finding no reversible error, the judgment is affirmed.

MILLARD, C. J., MAIN, STEINERT, and GERAGHTY, JJ., concur.